UNITED STATES DISTICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SUSAN GRASHOFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:19-CV-00276-HAB |
| ) | |
| FREDERICK D. PAYNE, in his official ) | |
| Capacity as COMMISSIONER OF THE ) | |
| INDIANA DEPARTMENT OF ) | |
| WORKFORCE DEVELOPMENT ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On twenty-four separate occasions, Plaintiff Susan Grashoff ("Grashoff") under-reported her income on weekly unemployment vouchers to the tune of $2,828.75. Once her deception was discovered by the Indiana Department of Workforce Development ("DWD"), Grashoff forfeited all benefits she received for each week of her under-reporting ($8,952.00) and the DWD assessed her an additional 25% civil penalty ($2,238.00), all pursuant to Indiana statute, IC § 22-4-13-1.1. In total, Grashoff's $2,828.75 under-reporting fiasco netted her a combined forfeiture and civil penalty of $11,190.00. She concedes that the amounts assessed are correct under the Indiana statute, but filed suit asserting these amounts violate the Eighth Amendment's guarantee against excessive fines.

Before the Court are cross-motions for summary judgment filed by Grashoff and the Commissioner of the DWD ("the Commissioner"). (ECF Nos. 32, 34)[1] At the request of the parties, the Court held oral argument on the motions. Having considered the briefs and arguments of the

---

[1] Also pending is Defendant's "Motion for Leave to File an Additional Exhibit in Support of Motion for Summary Judgment." (ECF No. 56). The Court GRANTS that motion.

parties, the Court concludes that the forfeiture provision of Indiana Code § 22-4-13-1.1 is remedial, not punitive, and the civil penalty provisions in Indiana Code § 22-4-13-1.1 are not grossly disproportionate to the harm they seek to deter and thus, do not constitute excessive fines under the Eighth Amendment.

## FACTUAL BACKGROUND

The underlying facts in this case are undisputed. In October 2016, Grashoff applied for and became eligible to receive weekly unemployment insurance ("UI") benefits administered by the DWD. Her initial weekly benefit amount was $373.00.

Grashoff applied for UI benefits and submitted all subsequent weekly vouchers, utilizing the DWD's online portal. This portal provides access to the Claimant Handbook and also provides a series of warnings to claimants at different stages of the submission process. Claimants must answer a series of questions, including whether they worked the week in question, and click through various warnings to finally submit their weekly claim vouchers. The warnings advise claimants in no uncertain terms that the failure to report all income earned during a particular week can lead to serious consequences. Grashoff found those out here.

Grashoff earned part-time income through her employment with the YMCA but, from December 10, 2016 through May 27, 2017, she failed to report any of that income on her weekly claim vouchers. The amount of her under-reporting varied weekly; at the low end, she underreported $12.18, while at the high end, she under-reported $198.55.

Indiana's statutes differentiate between fraudulent violations of the UI reporting rules and non-fraudulent violations. Upon discovery of a failure to report income, the DWD investigates the claimant's submissions, determines the overpayment amount, determines whether the claimant committed fraud, and assesses the appropriate statutory remedy. If determined to be a non-

fraudulent overpayment, Ind. Code § 22-4-13-1(d) applies to determine the improperly paid benefits that must be repaid. This amount will not accrue interest, result in the forfeiture of all benefits, or have any other penalty assessed. If determined to be a fraudulent or knowing overpayment, the DWD applies Ind. Code § 22-4-13-1.1(a) to require forfeiture of the entire weekly benefit for "any week in which the failure to disclose or falsification caused benefits to be paid improperly." Additionally, a claimant is subject to a graduated civil penalty for each instance in which the individual knowingly failed to disclose income. Ind. Code §22-4-13-1.1(b). For a first instance, the statute imposes a civil penalty of 25% of the benefit overpayment. Second and third instances impose penalties of 50% and 100%, respectively, of the benefit overpayment.

In Grashoff's case, upon the DWD's discovery of her under-reporting, it determined that she knowingly violated the reporting requirements and applied the statutory forfeiture and penalties provisions in Ind. Code § 22-4-13-1.1. Her forfeiture amount was calculated at $8,952.00, the aggregate of the full weekly benefits she received in each of the weeks in which she underreported. The DWD assessed an aggregate civil penalty of $2,238.00, or 25% of the overpayment amount of $8,592.00. Parsed out in a weekly calculation, Grashoff forfeited $373.00 in benefits for each of the 24 weeks she under-reported her income and was assessed a civil penalty of $93.25 for each of those same weeks. This determination was upheld on appeal to the Unemployment Insurance Appeals Board as it concluded that "the Claimant did knowingly fail to disclose or falsified facts in the filing of her vouchers, and is liable to repay all benefits received. Claimant is also liable for civil penalties assessed on the claim." (ECF No. 33-19). Grashoff was not prosecuted criminally for fraud.

**APPLICABLE STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v.Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

**DISCUSSION**

This case boils down to one question: are the penalty and forfeiture schemes in Ind. Code § 22-4-13-1.1 excessive fines violative of the Eighth Amendment?[2] Given the impact fraud has on

---

[2] Grashoff requests that the Court declare *all* of Indiana Code § 22-4-13-1.1 unconstitutional. However, she makes no Constitutional argument related to subsection (c), relating to the administrative review of

4

the administration of public programs, this Court concludes below that the challenged provisions here do not come anywhere near a level of constitutional concern. Before turning to that ultimate question, however, the Court must work through the preliminary issue of standing.

### A. Standing

Federal courts have jurisdiction over certain cases and controversies. U.S. Const. Art. III, § 2. Standing is "the irreducible constitutional minimum" that determines which cases and controversies "are of the justiciable sort referred to in Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The party invoking federal jurisdiction must establish the elements of standing: (1) that she suffered an injury in fact, (2) that the injury is causally connected to the challenged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable judicial decision. *Id.* at 560–61.

The Commissioner asserts that Grashoff lacks Article III standing to challenge any portion of the statute to which she was not subjected. He concedes, for instance, that Grashoff has standing to challenge Ind. Code §22-4-13-1.1(a) as well as the portion of § 1.1(b) — the 25% penalty provision — under which she was penalized, but not the additional portions of § 1.1(b)(2) and (3). Essentially, he argues that because she has not been penalized under these provisions, she has suffered no "injury in fact" and thus, she cannot demonstrate Article III standing to challenge these statutory provisions. Similarly, since she suffered no injury under those provisions, there is no likelihood that a favorable decision as to those provisions would provide her with redress.

---

civil penalties, or subsection (d), relating to where civil penalties must be deposited under the statute. Thus, she has waived this argument. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman- Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("[U]ndeveloped arguments are waived[.]").

As noted *supra*, Ind. Code § 22-14-13-1.1(b) sets forth a graduated penalty scheme commensurate with a claimant's offense level:

> (b) In addition to amounts forfeited under subsection (a), an individual is subject to the following civil penalties for each instance in which the individual knowingly fails to disclose or falsifies any fact that if accurately reported to the department would disqualify the individual for benefits, reduce the individual's benefits, or render the individual ineligible for benefits or extended benefits:
>
>   (1) For the first instance, an amount equal to twenty-five percent (25%) of the benefit overpayment.
>
>   (2) For the second instance, an amount equal to fifty percent (50%) of the benefit overpayment.
>
>   (3) For the third and each subsequent instance, an amount equal to one hundred percent (100%) of the benefit overpayment.

Ind. Code § 22-4-13-1.1(b). According to Grashoff, she has standing to challenge the entirety of the scheme because she suffered an "injury in fact" under the 25% penalty and there is a likelihood that she might become subject to one of the larger penalties.[3] This court disagrees.

In some circumstances, even a "probability rather than certainty of future injury may support standing" to challenge the constitutionality of statutes. *Sierakowski v. Ryan,* 223 F.3d 440, 443 (7th Cir.2000) (citing *Pennell v. City of San Jose,* 485 U.S. 1 (1988)). But even under a probability standard, Grashoff is unable to reasonably show that she will again be subject to the alleged illegality she challenges. As the Commissioner points out, Grashoff testified that she has no future plans to file for unemployment and under-report her part-time income. Thus, for Grashoff to suffer a future injury she would have to become unemployed, apply for UI benefits, under-report her income for a second (or third) time, have that under-reporting discovered, and be assessed penalties for a repeat offense under § 1.1(b)(2) or (3). The likelihood of such a string of events

---

[3] Further, she advocates that if she prevails on the merits of her claim with respect to the 25% penalty provision, then the remaining penalty provisions are *a fortiori* excessive and must be found unconstitutional.

occurring is far too remote to provide a basis for standing. See *Feit v. Ward,* 886 F.2d 848, 858 (7th Cir. 1989) (noting that the terminated employee's argument that he could be rehired by the defendant, repeat his conduct, and be discharged again for unconstitutional practices of the defendant is too remote when asking for declaratory and injunctive relief). Thus, the Court concludes that Grashoff's standing is limited to challenging the constitutionality of the penalty provision to which she was subject.[4]

### B. Eighth Amendment Claims

! Grashoff contends that the imposition of both the forfeiture provision in Indiana Code § 22-4-13-1.1(a) and the penalty provisions in § 22-4-13-1.1(b) violate her Eighth Amendment rights under the Constitution. As *Timbs v. Indiana*, ––– U.S. –––, 139 S. Ct. 682, 687, 203 L.Ed.2d 11 (2019) held that the Eighth Amendment's Excessive Fines Clause is an incorporated protection applicable against the States under the Fourteenth Amendment, the Supreme Court has affirmatively opened the door to the Eighth Amendment challenges Grashoff presents and to which the Court now turns its attention.

The Eighth Amendment to the United States Constitution provides that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend VIII. Importantly here, the second clause — the Excessive Fines Clause — "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Austin v. United States*, 509 U.S. 602, 609–610 (1993) (internal quotation marks and citation omitted). Indeed, the Excessive Fines Clause harkens back to the Amercements Clause of the Magna Carta which "guaranteed that '[a] Free-man shall not be amerced for a small fault,

---

[4] Other than to reference her argument that if the 25% penalty provision is constitutionally excessive, the entire progressive scheme violates the Eighth Amendment, Grashoff makes no independent argument as to the constitutionality of the 50% and 100% penalty provisions. Thus, she has waived these arguments.

but after the manner of the fault; and for a great fault after the greatness thereof, saving to him his contenement ...." *Timbs*, 139 S. Ct. 682, 687 (citation omitted). Thus, economic penalties must "be proportioned to the wrong" and "not be so large as to deprive [an offender] of his livelihood." *Browning-Ferris Industries of Vt., Inc.* v. *Kelco Disposal, Inc.*, 492 U.S. 257, 263 (1989).

In *United States v. Bajakajian*, 524 U.S. 321, 118 (1998), the Supreme Court established the standard for evaluating claims under the Excessive Fines Clause. "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.* at 334. Thus, there is a two-step inquiry in analyzing an excessive fines claim: (1) is the fine punitive, and if so, (2) is it excessive? *Bajakajian*, 524 U.S. at 334.

**1. Are the Economic Sanctions in Ind.Code §22-4-13-1.1 Punitive?**

To determine when a fine is punitive, courts look to whether the fine is tied to punishment and prohibited conduct or whether it is remedial in nature. *Bajakajian*, 524 U.S. at 328; *Austin*, 509 U.S. at 619-22. Demarcation of whether and to what extent an economic sanction is "remedial" is fact-specific and not dependent on the legal label assigned to it. "Although labels can be instructive, because they tend to correlate to certain purposes—"restitution" is almost always remedial, "civil in rem forfeitures" are typically remedial, and "fines" are typically punitive—courts cannot rely on these labels and must make their own determinations about the nature of the sanction." *United States v. Basurto,* 117 F.Supp.3d 1266 (D.N.M., 2015) (citing *Austin v.* 509 U.S. at 618). Thus, "[s]tatutory civil forfeitures, special assessments, and, even, theoretically, restitution could all be constitutional fines, while statutory fines could, likewise, fall outside of the [Excessive Fines] Clause's scope." *Id.*

8

In this case, Grashoff asserts that both the forfeiture[5] and penalty portions of Ind. Code § 22-4-13-1.1 are punitive in nature because they are designed as a deterrent and tied to prohibited conduct. Thus, she argues that this Court should move directly to the secondary question of whether they are excessive. For its part, the Commissioner concedes the penalty provisions in Ind. Code § 22-4-13-1.1.(b) warrant scrutiny under *Bajakajian* but asserts that the forfeiture provisions under § 22-4-13-1.1(a) merely reimburse the State for amounts overpaid to the claimant and thus, are not punitive and subject to a *Bajakajian* critique.

Subsection 1.1(a) of Ind. Code § 22-4-13 provides as follows:

(a) Notwithstanding any other provisions of this article, if an individual knowingly:

  (1) fails to disclose amounts earned during any week in the individual's waiting period, benefit period, or extended benefit period; or

  (2) fails to disclose or has falsified any fact;

that would disqualify the individual for benefits, reduce the individual's benefits, or render the individual ineligible for benefits or extended benefits, the individual forfeits any wage credits earned or any benefits or extended benefits that might otherwise be payable to the individual for any week in which the failure to disclose or falsification caused benefits to be paid improperly.

Ind. Code § 22-4-13-1.1.

The Commissioner asserts that this subsection is entirely remedial because, when an individual fraudulently or knowingly fails to report income, they become ineligible for all benefits and the loss to the State is the entire amount of weekly benefits it paid to the claimant. Indeed, as the Commissioner sees it "as soon as she committed fraud, she was not eligible to receive

---

[5] In their briefs as well as during oral argument, the parties refer to Ind. Code § 22-4-13-1.1 as having two provisions: the "forfeiture provision" and the "penalty provision." The Court notes that the text of the statute contains the words "forfeit" and "penalties" which justifies the parties' classifications of them in this way. However, it should be noted that the statute does not contain any direct labeling identifying the provisions.

benefits…[S]o the harm to the State is the $8,000 … the benefits that she received for the weeks in question." (Hrg. Tr. at 11).

In response, Grashoff asserts that this portion of the statute cannot plausibly be "remedial" in nature because the State's remedial interest is fully served by another provision, Ind. Code § 22-4-13-1(d). Grashoff asserts this is so because that provision entitles the State to a return of any portion of benefits to which a claimant would not be entitled due to non-fraudulent failing to report wages. Thus, in Grashoff's eyes, the State's loss is the same – the amount of the benefit offset from the under-reported income – regardless of whether a claimant fraudulently under-reports income or honestly does so.

This Court cannot subscribe to Grashoff's theory under the facts and circumstances here. As noted *supra*, while the Indiana statutes distinguish culpable from innocent conduct, this alone is not determinative of whether a forfeiture or fine provision is punitive. Rather, a civil sanction is considered remedial if it correlates to "damages sustained by society or to the cost of enforcing the law." *Austin v. United States,* 509 U.S. at 621. That is precisely the argument asserted by the Commissioner here – that the forfeiture provision merely reimburses the State for the damages it sustained by the claimant's fraudulent conduct. Where a claimant knowingly under-reports or fails to report income that would make a change in their benefit calculation, the claimant is immediately ineligible for all benefits for the week. Thus, when Grashoff was assessed $8,952.00, this amount constituted the aggregate weekly benefits to which she was not entitled to in the first instance, but still received, and funds to which the State has a fiduciary duty to protect in the UI trust fund. The State receives no windfall by recouping from Grashoff benefits it never owed her and to which she was not entitled. *See also Farina v. Metropolitan Transportation Authority,* 409 F.Supp.3d 173 (S.D.N.Y. 2019) (fines intended only to compensate the government for its lost revenue fall outside

10

the scope of the Excessive Fines Clause); *Disc. Inn, Inc. v. City of Chicago*, 72 F. Supp. 3d 930, 934 (N.D. Ill. 2014), aff'd, 803 F.3d 317 (7th Cir. 2015) (weed ordinance with per day fine was punitive because it was not related to the municipality's reimbursement costs for weed control). Rather, the State recouped the compensation it had erroneously paid her because of her fraudulent conduct. Accordingly, the Court agrees with the Commissioner that the forfeiture provision of Ind. Code § 22-4-13-1.1(a) is entirely remedial and does not serve a punitive purpose.

Having concluded that the forfeiture provision is not punitive in nature, but rather remedial, it avoids Eighth Amendment scrutiny. *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232 (1972)); *Austin*, 509 U.S. at 622 ("The Clause prohibits only the imposition of "excessive" fines, and a fine that serves purely remedial purposes cannot be considered 'excessive' in any event.").

**2. Are the Penalty Provisions of Ind. Code § 22-4-13-1.1(b) Excessive?**

This leaves the Court to analyze the penalty provisions of Ind. Code § 22-4-13-1.1(b). A fine violates the excessiveness standard of the Eighth Amendment if the amount of the fine is "grossly disproportionate to the gravity of the offense." *Bajakajian*, 524 U.S. at 324, 334 ("The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish."). To determine whether the fine is unconstitutionally excessive, the Court must assess it using the four *Bajakajian* factors: (1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct. Although *Bajakajian* was decided against the backdrop of a criminal forfeiture statute, these factors apply equally, albeit modified slightly, for fines assessed in the civil context. *See*

11

*Balice v. U.S. Dept. of Agriculture,* 203 F.3d 684, 698-99 (9th Cir. 2000) (applying *Bajakajian* factors to civil fines levied under the Agricultural Marketing Agreement Act). Nevertheless, when examined here, all four factors confirm that the penalty imposed against Grashoff does not violate the Excessive Fines Clause.

To begin, Grashoff downplays her conduct asserting that, like the violation in *Bajakajian*, her fraudulent conduct was no more than a minor reporting violation and thus, the 25% penalty imposed on her is grossly disproportionate to her offense. She further points out that the penalty is the same, $93.25, for each week she under-reported regardless of whether she under-reported $12.18 in a given week or $200 in a given week. Thus, she contends that there is complete disproportionality between the amount of the penalty and what she actually failed to report each week.

Taking her arguments in the reverse order, the Court notes that the penalty, a fixed percentage, is calculated based on the amount of the weekly overpayment, not the amount of the under-reported income. While Grashoff argues that this leads to disproportionality because her culpability only includes the amount she failed to report, and thus, the penalty should be in proportion to that amount, the statute as written contemplates differently. The statute references the penalty percentage in terms of the "benefit overpayment." As the Court articulated with respect to the forfeiture provision, upon commission of a knowing violation, the benefit overpayment is the entire weekly benefit. Thus, the penalty percentage is calculated based on the claimant's entire weekly benefit, which varies for each claimant that applies for UI benefits and is in proportion to that amount. Thus, the court does not find a complete absence of proportionality as advocated by Grashoff.

As for her argument that her culpable harm is minimal under the first *Bajakajian* factor, the Court disagrees. In *Bajakajian,* the respondent pled guilty to failing to report that he was transporting more than $10,000 outside the United States, and the Government sought forfeiture of the entire $357,144 in cash that he was carrying. 524 U.S. at 325. The Court noted that the full forfeiture was grossly disproportional to the offense, because in committing this crime, "[t]here was no fraud on the United States, and respondent caused no loss to the public fisc. Had his crime gone undetected, the Government would have been deprived only of the information that $357,144 had left the country." *Id.* at 338.

The lack of harm to the government found in *Bajakajian* is surely absent here, as is the level of culpability.[6] While the DWD treated Grashoff's 24 instances of knowingly under-reporting as being a one-off violation for purposes of assessing penalties under Ind. Code §22-4-13-1.1(b), the Commissioner argues, and this Court agrees, that each of those 24 instances required Grashoff to click through the online portal, read the warnings and acknowledge them. Each time, she certified that she had not worked and had generated no weekly income. Thus, this was not a one-time offense, like in *Bajakajian*; it was a repeated offense, 24 times, no less.

In *United States v. Malewicka*, 664 F.3d 1099 (7th Cir. 2011), the defendant was charged with 23 counts of structuring transactions for the purpose of avoiding bank reporting requirements. All told, her transactions totaled $279,500, all of which the trial court found subject to forfeiture under the criminal statute. On appeal, the defendant asserted that the forfeiture constituted an excessive fine under the Eighth Amendment. Applying the *Bajakajian* factors, the Seventh Circuit

---

[6] Grashoff maintains that she was unaware that she was required to report part-time income and that she has dyslexia which prevented her from fully comprehending the warnings she received. However, the DWD made an administrative finding that she knowingly under-reported her income, which she appealed and lost. Thus, for this Court's purposes, the administrative determination stands as to whether Grashoff knowingly under-reported.

13

concluded that no Constitutional violation occurred and took specific note of the defendant's culpability (as demonstrated by her repetitive conduct) and the resulting harm to society:

> Though Appellant argues that her crime too was a simple reporting offense, in fact, her crime differs in both quality and quantity. True, Malewicka's underlying activities—depositing and withdrawing cash from the bank—were lawful. However, unlike Bajakajian's reporting failure, Malewicka's crime affected more than just herself and the government; her actions also implicated the bank as an intermediary actor and affected its legal duty to report certain transactions. *United States v. Ahmad,* 213 F.3d 805, 817 (4th Cir. 2000) ("Ahmad's deposit structuring activities not only caused the government to lose information, but also implicated an intermediary actor, the First Virginia Bank, and affected its legal duty to report certain transactions."). Furthermore, while Bajakajian committed a single offense, Malewicka was convicted of actively concealing the nature of her transactions on twenty-three occasions to avoid filing Currency Transaction Reports ("CTR").

*Malewicka*, 664 F.3d at 1104.

The rationale supporting the forfeiture in *Malewicka* is equally applicable to the penalty here. While Grashoff's earning of part-time income whilst receiving unemployment was lawful, her failure to report those earnings was not. Her fraudulent conduct, for which she could have been prosecuted, is more than just a simple reporting violation and does implicate important harms to the government:

> Fraudulent claims against the public fisk [sic] do more harm than technical, informational violations of law. There is of course the monetary harm to the limited pool of funds available to be paid out to claimants, but there is also the more general harm to the administration and integrity of the program. Additionally, the State has a strong interest in preventing fraud as a general matter, thus the measure of deterrence that is provided helps to justify the penalty.

*Zynda v. Arwood,* 175 F.Supp.3d 791 (E.D. Mich. 2016). Accordingly, the Court concludes the first factor weighs against Grashoff.

Next, the Court has little pause in concluding that Grashoff falls squarely within the class of individuals targeted by Ind. Code § 22-4-13-1.1(b), those submitting fraudulent claims and seeking to take advantage of the UI statutes. While Grashoff acknowledges that the statute principally targets "persons that intend to deceive the State to get unemployment compensation

benefits that they *know* they are not entitled to" (ECF No. 45 at 13) (emphasis added), she attempts to distance herself from this statutory purpose by claiming that Grashoff's conduct was *knowing* but not intentional. But, Ind. Code § 22-3-14-1.1 expressly applies to *knowing* conduct and Grashoff has not challenged her administrative finding that she *knowingly* failed to report. Thus, the Court fails to see how she eludes the expressed legislative purpose of the statutory penalty or finds herself distinct from this class of individuals who commit such violations.

In terms of criminal liability, Indiana's statutes impose considerable fines and sentences for conduct similar to Grashoff's. *See* Ind. Code § 22-4-34-4 (violations of the Unemployment Compensation Act, per instance maximum penalty of 60 days imprisonment and a $500 fine);  Ind. Code 35-43-5-7(b)(1) (welfare fraud involving $750-$50,000, maximum penalty of 2.5 years imprisonment and a $10,000 fine); Ind. Code §35-50-5-2 (alternate fine for welfare fraud conviction equal to twice the pecuniary gain to defendant or twice the loss to the victim). Thus, in this instance, Grashoff's 25% penalty was well within the statutory ranges of penalties she could have received criminally and thus, does not suggest a constitutional violation.

The final *Bajakajian* factor, the harm caused by the conduct, has been addressed in part, *supra*, but there are additional considerations. Among other things, "courts may also consider how the violation erodes the government's purposes for proscribing the conduct." *Pimentel v. City of Los Angeles*, No. 18-56553, 2020 WL 4197744, at *5 (9th Cir. July 22, 2020). The Commissioner sets forth numerous harms that all weigh in favor of the constitutionality of the penalty imposed. For instance, Grashoff's failure to report her income implicates serious government interests and responsibilities such as the State's fiduciary duty to protect Indiana's Trust Fund to ensure its viability and sanctity for all Indiana's UI applicants. Likewise, the State must be able to safeguard the Trust Fund from fraudulent claims as the very act of fraud undermines the viability of the fund.

The Commissioner notes that in 2019, 137,603 people applied for UI benefits and the DWD estimates that approximately 2% of those claimants committed fraud. Extrapolated from there, the Commissioner argues that each individual instance of fraud has a harmful impact on the Trust Fund and thus, the importance of deterring such conduct with fines is critical to offset that harmful impact.[7] Accordingly, the Court concludes that this factor, too, supports the constitutionality of the penalty provision.[8]

Considering the *Bajakajian* factors, the Court concludes that the 25% penalty provision in § 22-4-13-1.1(b) is not grossly disproportional to the underlying offense of knowingly under-reporting income for purposes of obtaining UI benefits. This provision does not offend the Eighth Amendment's Excessive Fines Clause. Accordingly, the Commissioner's Motion for Summary Judgment is GRANTED. Grashoff's Motion for Summary Judgment is DENIED.[9]

## CONCLUSION

Based on the foregoing, the Commissioner's Motion for Summary Judgment is GRANTED. (ECF No. 34). Grashoff's Motion for Summary Judgment (ECF No. 32) is DENIED

---

[7] Grashoff makes a thorough, but unconvincing argument, that because the money recovered from claimants under Ind.Code §22-4-13-1.1 "benefits the government beyond replenishment of the unemployment fund," the penalty provision is constitutionally excessive.

[8] Grashoff further argues that her financial circumstances are not considered when applying the penalties in Ind. Code § 22-4-13-1.1 and that there is "no available offset, write off, or financial hardship waiver for fraud penalties." (ECF No. 33 at 14). However, the Supreme Court expressly declined to address this issue in *Bajakajian*, see 524 U.S. at 340 n.15, and *Timbs* likewise left this an open question. 139 S.Ct. at 688. This Court has found no opinions that have engrafted onto the Eighth Amendment's Excessive Fines Clause a means-testing requirement.

[9] Grashoff asserts that § 22-4-13-1.1 is both unconstitutional facially and "as applied." A facial challenge contends that a law or section thereof cannot be constitutionally applied to any set of facts, and an as applied challenge argues that the provision challenged is unconstitutional only as applied to the facts of the case under consideration. *United States v. Salerno*, 481 U.S. 739, 745 and n.3. The Court finds no Eighth Amendment constitutional infirmity under either theory for the reasons set out in the main Opinion and Order.

The Commissioner's unopposed "Motion for Leave to File an Additional Exhibit in Support of Motion for Summary Judgment" (ECF No. 56) is also GRANTED. The Clerk is DIRECTED to enter judgment in favor of the Commissioner.

SO ORDERED on August 11, 2020

> s/ *Holly A. Brady*
> JUDGE HOLLY A. BRADY
> UNITED STATES DISTRICT COURT